Citation Nr: 1438763 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 08-23 584 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUES

1. Entitlement to a rating in excess of 10 percent for numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation for the period from October 5, 2004 to April 3, 2006.

2. Entitlement to a rating in excess of 30 percent for numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation for the period from April 4, 2006 to September 19, 2006.

3. Entitlement to a rating in excess of 40 percent for numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation for the period from July 1, 2007 to February 28, 2011.

4. Entitlement to a rating in excess of 30 percent for numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation for the period beginning on March 1, 2011.



REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

Kristy L. Zadora, Counsel


INTRODUCTION

The Veteran had active duty service from March 1999 to December 2001.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a June 2007 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Los Angeles, California, which partially granted the Veteran's claim for an increased rating for numbness along the ulnar border of the right forearm and fourth and fifth fingers. Specifically, a 10 percent rating for this disability prior to April 4, 2006 was continued, a 30 percent rating from April 4, 2006 through September 19, 2006 was assigned, a temporary total rating under 38 C.F.R. § 4.30 from September 20, 2006 through March 31, 2007 was assigned, and a 40 percent rating as of April 1, 2007 was assigned.

In a November 2007 statement of the case, the Agency of Original Jurisdiction (AOJ) extended the temporary total rating for convalescence from a right ulnar nerve transposition procedure through June 30, 2007. 

In June 2010, the AOJ proposed to reduce the 40 percent rating for this disability to 30 percent. This proposed reduction was implemented in a December 2010 rating decision, effective from March 1, 2011. The Board notes that the Veteran has not appealed this reduction but rather has generally sought a higher rating for his disability.

The Board remanded the instant claims in February 2013 and April 2014. As will be discussed herein, the Board finds that the AOJ substantially complied with the remand orders with regard to the instant claims and no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002).

In July 2014, the Veteran waived the 30 day period in which he may submit additional evidence and requested that the Board proceed with the adjudication process.

The Board notes that the Veteran requested an RO hearing during the appeal period and, while the case remained at the RO and following its receipt by the Board, multiple attempts have been made to contact the Veteran to ascertain whether he wished to appear for an RO hearing and to schedule that hearing, but VA was unable to contact the Veteran at his address of record or by telephone. In a November 2012 correspondence sent to the Veteran at his address of record, the Board requested that he specify whether an RO hearing was desired. In addition, the Veteran was informed of this action in the text of the Board's February 2013 and April 2014 remands. The Veteran has not responded to these inquires. Therefore, the Veteran's request for a Board hearing is considered to be withdrawn. 38 C.F.R. § 20.704(e) (2013).

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. The Board notes that, in addition to the VBMS file, there is a separate electronic (Virtual VA) file associated with the Veteran's claims. A review of the Virtual VA file does not reveal any additional documents pertinent to the present appeals with the exception of VA treatment records dated through December 2012; such treatment records do not appear to have been considered by the AOJ in the June 2014 supplemental statement of the case. However, such documents are not relevant to the claim on appeal and hence do not require a waiver. See C.F.R. § 20.1304(c) (2013). 

As noted in the Board's previous remands, the issue of entitlement to a separate compensable rating for right elbow scarring due to a right ulnar nerve transposition is reasonably raised by the record. To date, this issue has not been developed or adjudicated by the AOJ. As such, it is referred to the AOJ for any and all indicated action. 38 C.F.R. § 19.9(b) (2013).


FINDINGS OF FACT

1. All notification and development actions needed to fairly adjudicate each claim herein decided have been accomplished.

2. The Veteran is right-hand dominant.

3. For the period from October 5, 2004 to April 3, 2006, the Veteran's numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation manifested as subjective complaints of numbness and/or burning as well as objective evidence of reduced or absent sensation without loss of reflexes, muscle atrophy or Griffin's claw deformity.

4. For the period from April 4, 2006 to September 19, 2006, the Veteran's numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation manifested as subjective complaints of numbness as well as objective evidence of reduced or absent sensation without loss of reflexes, muscle atrophy or Griffin's claw deformity.

5. For the period from July 1, 2007 to February 28, 2011, the Veteran's numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation manifested as subjective complaints of numbness as well as objective evidence of reduced or absent sensation without loss of reflexes, muscle atrophy or a Griffin's claw deformity.

6. For the period beginning on March 1, 2011, the Veteran's numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation manifested as minor nerve impairment without objective evidence of constant pain, a loss of reflexes, muscle atrophy or a Griffin's claw deformity.

CONCLUSIONS OF LAW

1. The criteria for a rating of 30 percent for numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation for the period from October 5, 2004 to April 3, 2006 have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.321, 4.1-4.10, 4.20, 4.27, 4.119, 4.120, 4.123, 4.124a, 8516 (2013).

2. The criteria for a rating in excess of 30 percent for numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation for the period from April 4, 2006 to September 19, 2006 have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.321, 4.1-4.10, 4.20, 4.27, 4.119, 4.120, 4.123, 4.124a, 8516 (2013).

3. The criteria for a rating in excess of 40 percent for numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation for the period from July 1, 2007 to February 28, 2011 have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.321, 4.1-4.10, 4.20, 4.27, 4.119, 4.120, 4.123, 4.124a, 8516 (2013).

4. The criteria for a rating in excess of 30 percent for numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation for the period beginning on March 1, 2001 have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.321, 3.655(b), 4.1-4.10, 4.20, 4.27, 4.119, 4.120, 4.123, 4.124a, 8516 (2013).





REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

With respect to the Veteran's claim decided herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2013).

VA has a duty to notify the claimant of any information and evidence needed to substantiate and complete a claims. See 38 U.S.C.A. §§ 5102, 5103. In order to meet the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b), notice must (1) inform the claimant about the information and evidence necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. Notice should be provided to a claimant before the initial unfavorable AOJ decision on a claim. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

The Court of Appeals for Veterans Claims (Court) held in Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), that the VA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include (1) the veteran's status; (2) the existence of a disability; (3) a connection between the veteran's service and the disability; (4) the degree of disability; and (5) the effective date of the disability. This notice must also inform the veteran that a disability rating and an effective date for the award of benefits will be assigned if service connection is granted. Id. 

A letter dated in January 2007 fully satisfied the duty to notify provisions as to the claim for an increased rating for numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with right elbow dislocation. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1); Quartuccio, at 187. In addition, a June 2008 letter set forth applicable criteria for higher ratings for numbness of the right forearm.

The Court previously held that to satisfy the first Quartuccio element for an increased compensation claim, section 5103(a) compliant notice must meet a four part test laid out in Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008). The United States Court of Appeals for the Federal Circuit (Federal Circuit) overruled the Vazquez-Flores test in part, striking the claimant-tailored and "daily life" notice elements. See Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The Court issued an opinion incorporating those surviving portions of the first Vazquez-Flores decision, namely that VA must notify the claimant that 1) to substantiate a claim, the claimant must provide, or ask VA to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability, 2) a disability rating will be determined by applying relevant Diagnostic Codes, which typically provide for a range in severity of a particular disability from noncompensable to as much as 100 percent (depending on the disability involved), based on the nature of the symptoms of the condition for which disability compensation is being sought, their severity and duration, and their impact upon employment, and 3) provide examples of the types of medical and lay evidence that the claimant may submit (or ask VA to obtain) that are relevant to establishing entitlement to increased compensation, and must also notify the claimant that to substantiate such a claim the claimant should provide or ask the Secretary to obtain medical or lay evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on the claimant's employment. See Vazquez v. Shinseki, 24 Vet. App. 94, 107 (2010) (Vazquez-Flores III). 

For the following reasons, the Board finds that the elements of the Vazquez-Flores test that remain under Vazquez-Flores III have either been met or that any error is not prejudicial with regards to the instant claim for an increased rating for numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation.

The first and third elements of Vazquez-Flores notice were met by the January 2007 and June 2008 notice letters. These letters informed the Veteran that he needed to provide information showing that his service-connected disability had worsened. He was informed that such evidence could consist of a statement from his doctor or lay statements describing what individuals had observed about his disability. He was told that he needed to provide VA information as to where he had received medical treatment, or that he could send VA any pertinent treatment records. Examples of evidence needed to support the claims were provided, including physical and clinical findings, and statements from other individuals who could describe from their knowledge and personal observations the manner in which his disability had affected him. He was also informed of what evidence VA would obtain on his behalf and what he needed to do to help VA process his claims. In addition, the Board notes that the Veteran was provided notice that a disability rating would be determined by application of the ratings schedule and relevant diagnostic codes based on the extent and duration of the signs and symptoms of his disability and their impact on his employment. As the Board finds that the Veteran had actual knowledge of the requirement to show worsening of the disability and the variety of the medical and lay evidence which could support his claims, any failure to provide him with adequate notice as to the Vazquez-Flores v. Peake elements is not prejudicial. 

After the issuance of the post-rating June 2008 letter, and the opportunity for the Veteran to respond, the June 2010 supplemental statement of the case (SSOC) reflects readjudication of the claims for an increased rating. Hence, the Veteran is not shown to be prejudiced by the timing of this latter notice. See Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (the issuance of a fully compliant VCAA notification followed by readjudication of the claim, such as in a statement of the case (SOC) or SSOC, is sufficient to cure a timing defect). 

Moreover, the Veteran has not alleged that he has received inadequate VCAA notice. See Goodwin v. Peake, 22 Vet. App. 128 (2008) (holding as to the notice requirements for downstream earlier effective date claims following the grant of service connection: "that where a claim has been substantiated after the enactment of the VCAA, the Veteran bears the burden of demonstrating any prejudice from defective VCAA notice with respect to the downstream elements"). As there is no indication that there exists any evidence, which could be obtained to affect the outcome of this case, no further VCAA notice is necessary. See Dela Cruz v. Principi, 15 Vet. App. 143, 149 (2001) (VCAA notice is not required where there is no reasonable possibility that additional development will aid the Veteran). In addition, the Veteran has not alleged prejudice from any notice deficiency. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (holding that a party alleging defective notice has the burden of showing how the defective notice was harmful). 

All the law requires is that the duty to notify is satisfied and that claimants are given the opportunity to submit information and evidence in support of their claims. Once this has been accomplished, all due process concerns have been satisfied. See Bernard v. Brown, 4 Vet. App. 384 (1993); Sutton v. Brown, 9 Vet. App. 553 (1996); see also 38 C.F.R. § 20.1102 (harmless error). In view of the foregoing, the Board finds that the Veteran was notified and aware of the evidence needed to substantiate his claims, as well as the avenues through which he might obtain such evidence, and of the allocation of responsibilities between himself and VA in obtaining such evidence. Accordingly, there is no further duty to notify.

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records, private treatment records and VA treatment records have been obtained and considered. Moreover, he has not identified any additional, outstanding records that have not been requested or obtained. 

The Veteran was afforded several VA examinations in conjunction with the claim decided herein, including VA examinations conducted in February 2007 and May 2010, to determine the severity of his numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation and an addendum opinion was obtained in April 2014. Neither the Veteran nor his representative have alleged that these VA examinations are inadequate for rating purposes. In July 2011 and March 2013, the Veteran was scheduled for a VA examination. In an April 2013 supplemental statement of the case, the RO notified the Veteran of his failure to appear without a showing of good cause and that the claim would be rated based on the evidence of record. See 38 C.F.R. § 3.655. In a December 2011 Memorandum, the Veteran's representative indicated that they had made multiple attempts to contact the Veteran without success. Notwithstanding the length of time since the May 2010 examinations, the Board finds that the examinations are adequate in order to evaluate the Veteran's service-connected numbness along the ulnar border of the right forearm and fourth and fifth fingers as they include an interview with the Veteran, a review of the record, and a full physical examination, addressing the relevant rating criteria. Therefore, in light of the Veteran's failure to report to his July 2011 and March 2013 VA examinations, the Board finds that the examination reports of record are adequate to adjudicate the Veteran's initial rating claims and no further examination is necessary.

As detailed in the Board's previous remands, the Veteran had failed to attend a VA examination scheduled in July 2011 and March 2013 and did not submit evidence as to why he failed to report for the scheduled examinations. A December 2011 Memo from the Veteran's representative indicates that they had attempted to contact the Veteran via telephone on multiple occasions but were unable to do so. Moreover, a February 2012 e-mail from a VA employee detailed the efforts undertaken to obtain updated contact information for the Veteran, including using a phone number listed in his hospital records, contacting his representative and using various internet sources. The Board notes that the duty to assist is not a "one-way street." See Wood v. Derwinski, 1 Vet. App. 190 (1991). It is his burden to keep VA apprised of his whereabouts and, if he does not do so, VA is not obligated to "turn up heaven and earth" to find him. See Hyson v. Brown, 5 Vet. App. 262 (1993). No further action is therefore necessary in this regard.

Moreover, based on the foregoing, the Board determines that the AOJ has substantially complied with the February 2013 and April 2014 remand directives in obtaining the Veteran's updated VA treatment records and obtaining a medical opinion as to the nature and severity of his disability, and as such that no further action is necessary in this regard. See D'Aries, supra.

Thus, the Board finds that VA has fully satisfied the duty to assist. In the circumstances of this case, additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant are to be avoided). VA has satisfied its duty to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, he will not be prejudiced as a result of the Board proceeding to the merits of his claims. 

II. Increased Rating Claim

The Veteran contends that the severity of his symptoms warrant a higher rating for his ulnar nerve disability. Specifically, he contends that his constant numbness and feelings of pins and needles in his right hand, forearm and elbow as well as severe burning sensation in these areas impact every area of his life and warrant a higher rating.

Disability evaluations are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7. All benefit of the doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3. 

In Fenderson v. West, 12 Vet. App. 119 (1999), it was held that evidence to be considered in the appeal of an initial assignment of a rating disability was not limited to that reflecting the then current severity of the disorder. Compare Francisco v. Brown, 7 Vet. App. 55, 58 (1994) (where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern). In Fenderson, the Court also discussed the concept of the "staging" of ratings, finding that, in cases where an initially assigned disability evaluation has been disagreed with, it was possible for a Veteran to be awarded separate percentage 

Staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. The relevant focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Consideration is given to the potential application of the various provisions of 38 C.F.R. Parts 3 and 4, whether or not they are raised by the Veteran, as required by Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

For the major extremity, a 10 percent rating is warranted for mild incomplete paralysis, a 30 percent rating is warranted for moderate incomplete paralysis, and a higher 40 percent rating is warranted for severe incomplete paralysis. 38 C.F.R. § 4.124a, Diagnostic Code 8516. Diagnostic Code 8616 refers to neuritis of the ulnar nerve while Diagnostic Code 8716 refers to neuralgia of the ulnar nerve.

Complete paralysis of the ulnar nerve contemplates the "griffin claw" deformity, due to flexor contraction of ring and little fingers, atrophy very marked in dorsal interspace and thenar and hypothenar eminences; loss of extension of ring and little fingers cannot spread the fingers (or reverse), cannot adduct the thumb; flexion of wrist weakened. Such warrants a 60 percent rating in the major extremity. Id.

In rating peripheral nerve injuries and their residuals, attention should be given to the site and character of the injury, the relative impairment and motor function, trophic changes, or sensory disturbances. 38 C.F.R. § 4.120. Under 38 C.F.R. § 4.124a, disability from neurological disorders is rated from 10 to 100 percent in proportion to the impairment of motor, sensory, or mental function. With partial loss of use of one or more extremities from neurological lesions, rating is to be by comparison with mild, moderate, severe, or complete paralysis of the peripheral nerves. The term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type of picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. 

When the involvement is only sensory, the rating should be for the mild, or at most, the moderate degree. In rating peripheral nerve disability, neuritis, characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating, is to be rated on the scale provided for injury of the nerve involved, with a maximum equal to severe, incomplete paralysis. The maximum rating to be assigned for neuritis not characterized by organic changes referred to in this section will be that for moderate incomplete paralysis, or with sciatic nerve involvement, for moderately severe incomplete paralysis. 38 C.F.R. § 4.123.

Descriptive words such as "slight," "moderate" and "severe" as used in the various Diagnostic Codes are not defined in VAs Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence for "equitable and just decisions." 38 C.F.R. § 4.6.

A January 2005 VA treatment note reflects the Veteran's complaints of numbness and burning in his right fingers and that his right ring and little fingers were numb up to the elbow following a fall down the stairs in September 2004. Physical examination revealed decreased sensation to the "palma" fourth and fifth digits and decreased range of motion to the fifth finger with weakness. Triceps, biceps and brachiaoradalis were found to be 2+.

A February 2005 VA treatment note indicated that there was total numbness along the ulnar border of the forearm and in the fourth and fifth fingers with a loss of motion in those fingers.

An April 2005 VA treatment note reflects the Veteran's complaints of a burning sensation to his small and ring fingers and that it was painful to flex his fingers completely. He reported that he was able to passively flex his small and ring fingers to touch the palm and "ex" completely. Pinprick sensation was noted to be absent in the small finger, ring finger and ulnar side of the forearm while there was a tingling sensation in the forearm. Fingers were able to extend completely except for the small finger that does not "abd" and "add." The first dorsal interosseous was noted to contract "quite well." An impression of incomplete ulnar neuropathy was made. An accompanying electromyography (EMG) consultation was found to be a normal study of the right upper limb with no evidence of an ulnar sensory motor neuropathy at or distal to the elbow.

A December 2005 VA treatment note reflects the Veteran's complaints of intense, burning pain over the ulnar nerve distribution which he rated as "5/10" at the time of the examination. Other symptoms included the sensation of pins and needles over the ulnar side of his right forearm that never went away and either numbness/tingling or a burning sensation in the right ulnar hand and fourth and fifth digits. The provider noted that the Veteran had "good function" of his hand and a splint was ordered.

A January 2006 VA treatment note reflects the Veteran's complaints of a continued burning sensation into the ring and small fingers that made it difficult to sleep at night. Physical examination was negative for Tinel's sign and found sensation to be absent in the ulnar two digits but intact in the radial three digits. Flexor strength of the ring and small fingers were found to be "3/5."

An April 4, 2006 VA treatment note reflected the Veteran's reports of worsening symptoms, that his numbness was increasingly constant and that his night splint was no longer helping. Physical examination revealed a positive Tinel sign at the elbow and ulnar nerve paresthesias in the hand. The orthopedist recommended that the Veteran be scheduled for transposition and ulnar nerve decompression.

On September 20, 2006, the Veteran underwent transposition of the ulnar nerve at the cubital tunnel.

In a February 2007 statement, the Veteran wrote that he experienced an intermittent severe burning sensation in his right hand, forearm and elbow. This sensation made it nearly impossible for him to sleep at night or to concentrate.

A February 2007 VA joints examination report reflected the Veteran's reports that he had undergone ulnar nerve transposition surgery in September 2006 and that his symptoms were worse following this surgery. Current symptoms were reported to include the continuous sensations of pins, needles and burning. Physical examination found sensation to be lost to two-point discrimination over the ulnar and radial borders of the small finger and the ring finger. Two-point discrimination over the remaining digits, both palmar and dorsally, were found to be intact. There was no noted atrophy and he had full range of motion of the hand and all fingers other than the small finger. With regards to the small finger, he was unable to have any active flexion but full passive range of motion was obtained.

A February 2007 VA neurology examination report reflects the Veteran's complaints right arm numbness and tingling that disrupted all activities. Other symptoms were reported to include a constant burning sensation affecting the fifth finger and portions of the fourth finger of the right hand as well as the medial aspect of the forearm extending to the level of the elbow around the scar. Medication was reported to be ineffective and there was no hypersensitivity to the area of numbness and burning. Sensory examination revealed no response to touch and pain in the area around his surgical scar as well as a similar loss of sensation combined with a slight tingling feeling in the medial aspect of the forearm. There was an absence of sensation in the small finger and minimal response with tingling in the fourth finger. Other fingers and the remainder of the arm were found to be normal. Reflex examination revealed that the Tinel sign was present with tap over the elbow ulnar distribution but not over the Guyon canal. Motor examination was negative for atrophy or involuntary movements and the first dorsal interossei were symmetrically displayed. There was normal abductor pollicis brevis symmetrically and moderately diminished response to the abductor digit minimi, although the examiner noted that the effort appeared to be somewhat inconsistent. There was a similar collapsing effect that was minimally and intermittently noted at the right risk extension task. Triceps and biceps were found to be excellent and deltoids were found to be normal. The examiner noted that while the Veteran's sensory complaints were reasonably credible, his motor difficulty was somewhat inconsistent and an ulnar nerve injury at the elbow should not be associated with prominent medial forearm symptomatology or sensory loss as this distribution would be characteristically an abnormality at the brachial plexus.

An April 2007 VA treatment note reflects the Veteran's complaints of increasing pain in his right palm that was not relieved with medication and that the sensation in his right hand was no better than before his surgery. He also reported being unable to flex his small and ring fingers, which was unchanged from prior to the surgery. Physical examination revealed a positive Tinels sign at the elbow ulnar nerve and hypothenar atrophy. Sensation was noted to be absent to "U-2" digits to pinprick.
The provider noted that the Veteran appeared to have activation of the finger flexors for the fourth and fifth digits but that that he had difficulty closing these fingers along with the others, likely due to habitual extension and lack of sensation.

In a June 2007 notice of disagreement, the Veteran wrote that the paralysis in his ring and little fingers were complete and he was unable to spread them.

A May 2010 VA examination report reflected the Veteran's complaints of a pins and needles sensation and a severe burning sensation in his ulnar fingers and forearms. He reported that sometimes his ulnar fingers worked and that sometimes they did not work. Current treatment was denied with the Veteran reporting that his past use of medication and right ulnar relocation surgery in 2006 were not effective. Physical examination revealed marked swelling and tenderness over the right medial epicondyle. Although mild right grip weakness was found, the examiner noted that the Veteran did not appear to be giving his full effort, possibly due to right medial epicondylar pain. While the Veteran was noted to continually keep his right ulnar fingers curled, the right ulnar innervated first "DI" was fully intact. No sensation to light touch or pinprick over the ulnar innervated portion of the forearm and hand were reported. Examination was also negative for finger stiffness, atrophy of the ulnar innervated or other muscles, paralysis, discoloration over the lower limbs, hair loss over the lower limbs, Tinel sign at the wrist/elbow/medial malleolus/fibular head, Phalens at 30 seconds, weakness key pinch, weakness tip pinch, weakness grip strength, difficulty spreading fingers or weakness of the OK sign. Deep tendon reflexes were "2+" in the biceps, triceps, brachioradialis and finger jerk. Detailed motor examination found the finger flexors and finger abduction to be "5/5." Sensory examination found light touch/pinprick to be normal in the epaulettes, posterior shoulders, deltoid patch, lateral wrist, third finger and medial wrist. An accompanying nerve conduction study showed mild prolongation of the distal latency of the right ulnar dorsal cutaneous nerve that was consistent with a remote ulnar relocation surgery.

An April 2014 Disability Benefits Questionnaire (DBQ) addendum opinion indicates that the Veteran's only nerve affected in the right upper extremity post-surgery was the right dorsal ulnar cutaneous sensory nerve, which was found to be remarkable for mild entrapment when compared to the left dorsal ulnar cutaneous sensory nerve. The examiner opined that these symptoms represented minimal impairment restricted to sensory involvement and that there was no paralysis, incomplete or otherwise.

For the period from October 5, 2004 to April 4, 2006, the Veteran's numbness along the ulnar border of the right forearm and fourth and fifth fingers manifested as subjective complaints of numbness and burning in the fourth and fifth fingers. Sensation was found to be decreased to the "palma" fourth and fifth digits and decreased range of motion to the fifth finger with weakness in January 2005 but 
pinprick sensation was noted to be absent in the small finger, ring finger and ulnar side of the forearm in April 2005. Sensation was again found to be absent in the ulnar digits (i.e. ring and little fingers) in January 2006. With regards to reduced or a loss of reflexes, such was not demonstrated on objective examination, as triceps, biceps and brachioradialis were found to be 2+ in January 2005. Although the Veteran subjectively claimed to have lost motion in his fingers, in a February 2005 VA treatment note, he subsequently reported such motion to be painful. In April 2005, he was able to passively flex his small and ring fingers to touch the palm of his hand. In light of the objective evidence of decreased or absent sensation and the Veteran's complaints of constant numbness or burning, a rating of 30 percent for moderate incomplete paralysis is warranted. A rating in excess of 30 percent for this period is not warranted as loss of reflexes, muscle atrophy and Griffin's claw deformity were not found on objective examination. 38 C.F.R. §§ 4.123, 4.124, Diagnostic Code 8516.

For the period from April 4, 2006 to September 19, 2006, the Veteran's numbness along the ulnar border of the right forearm and fourth and fifth fingers manifested as subjective complaints of constant numbness. Sensation was found to be decreased or absent on objective examination on April 4, 2006. There is no objective evidence of loss of reflexes, muscle atrophy or a Griffin's claw deformity. A rating in excess of 30 percent for this period is therefore not warranted. Id.

For the period from July 1, 2007 to February 28, 2011, the Veteran's numbness along the ulnar border of the right forearm and fourth and fifth fingers manifested as subjective complaints of constant burning and a pins and needles sensation. Sensation was found to be lost or absent on objective examination in February 2007, April 2007 and May 2010. Muscle atrophy was not found on objective examination and deep tendon reflexes were "2+" in the biceps, triceps, brachioradialis and finger jerk in May 2010. Although the Veteran has asserted that he was unable to spread his fingers in the June 2007 notice of disagreement, such was not found on objective examination. The May 2010 provider noted that the right ulnar innervated first DI was fully intact and the April 2007 provider attributed the Veteran's difficulty closing his fourth and fifth digits to habitual extension and lack of sensation. A rating in excess of 40 percent for this period is not warranted as there is no objective evidence of a Griffin claw deformity, loss of abduction of the thumb and flexion of the wrist weakened. Id.

For the period beginning on March 1, 2011, the Board notes that the Veteran failed to appear for VA examinations scheduled in July 2011 and March 2013 without explanation and that his claim will therefore be rated based on the evidence of record. See 38 C.F.R. § 3.655(b). An April 2014 DBQ report indicates that the only nerve affected in the right upper extremity was the right dorsal ulnar cutaneous nerve which demonstrated mild entrapment and minimal sensory involvement. The examiner further found that no paralysis, incomplete or otherwise, was demonstrated. A rating in excess of 30 percent for the period beginning on March 1, 2011 is not warranted as the record does not establish that the Veteran suffered from the loss of reflexes, muscle atrophy or constant pain. 38 C.F.R. §§ 4.123, 4.124, Diagnostic Code 8516.

The Board has considered whether further staged ratings under Hart, supra, are appropriate for the Veteran's service-connected numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation; however, the Board finds that his symptomatology has been stable during each stage the appeal. Therefore, assigning further staged ratings for such disability is not warranted.

Additionally, the Board has contemplated whether the case should be referred for extra-schedular consideration. An extra-schedular disability rating is warranted if the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that application of the regular schedular standards would be impracticable. 38 C.F.R. § 3.321(b)(1). 

In Thun v. Peake, 22 Vet. App. 111, 115-16 (2008), the Court explained how the provisions of 38 C.F.R. § 3.321 are applied. Specifically, the Court stated that the determination of whether a claimant is entitled to an extra-schedular rating under 
§ 3.321 is a three-step inquiry. First, it must be determined whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. In this regard, the Court indicated that there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required.

Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as "marked interference with employment" and "frequent periods of hospitalization." Third, when an analysis of the first two steps reveals that the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extra-schedular rating. Id. 

The Board has carefully compared the level of severity and symptomatology of the Veteran's service-connected numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation with the established criteria found in the rating schedule. The Board finds that the Veteran's nerve symptomatology is fully addressed by the rating criteria under which such disability is rated. In this regard, all of the Veteran's nerve symptomatology is contemplated by the rating criteria, to include those symptoms which are not specifically enumerated. See Mauerhan, supra. There are no additional symptoms of his numbness along the ulnar border of the right forearm and fourth and fifth fingers are not addressed by the rating schedule. Therefore, the Board finds that the rating criteria reasonably describe the Veteran's disability level and symptomatology of his service-connected disability. As such, the Board finds that the rating schedule is adequate to evaluate the Veteran's disability picture. Therefore, the Board need not proceed to consider the second factor, viz., whether there are attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization. 

Further, the Board notes that, pursuant to Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a Veteran may be awarded an extra-schedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where evaluation of the individual conditions fails to capture all the symptoms associated with service-connected disabilities experienced. However, in this case, even after affording the Veteran the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there is no additional ulnar nerve impairment that has not been attributed to a specific service-connected disability. Accordingly, this is not an exceptional circumstance in which extra-schedular consideration may be required to compensate the Veteran for disability that can be attributed only to the combined effect of multiple conditions.

Consequently, the Board concludes that referral of this case for consideration of an extra-schedular rating is not warranted. Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996). 

The Board also notes that, a claim for a total disability rating based on individual unemployability (TDIU) may be raised in the record as a component of a claim for higher rating (see e.g., Rice v. Shinseki, 22 Vet. App. 447 (2009). In this case, the Veteran reported that he was employed as a 911 operator in the May 2010 VA examination and there is no indication that he is currently unemployed. As such, a claim for a TDIU due to numbness along the ulnar nerve border of the right forearm and fourth and fifth fingers associated with elbow dislocation has not reasonably been raised, and need not be addressed.

For all the foregoing reasons, the Board finds that a 30 percent rating, but no higher, is warranted for the appellate period from October 5, 2004 to April 3, 2006. The Board has applied the benefit-of-the-doubt doctrine in awarding this 30 percent rating, but finds that the preponderance of the evidence is against assignment of a higher rating at any other time pertinent to this appeal. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 4.3, 4.7; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).


ORDER

A rating of 30 percent for numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation for the period from October 5, 2004 to April 3, 2006 is granted, subject to the laws and regulations governing payment of monetary benefits.

A rating in excess of 30 percent for numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation for the period from April 4, 2006 to September 19, 2006 is denied.

A rating in excess of 40 percent for numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation for the period from July 1, 2007 to February 28, 2011 is denied.

A rating in excess of 30 percent for numbness along the ulnar border of the right forearm and fourth and fifth fingers associated with a right elbow dislocation for the period beginning on March 1, 2011 is denied.





____________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs